UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| UNITED STATES OF AMERICA | : | DOCKET NO. 19-70 |
| | : | |
| v. | : | |
| | : | |
| DANIEL E. CARPENTER | : | March 23, 2020 |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S
SECOND MOTION FOR RELEASE ON BOND PENDING APPEAL**

The defendant, Daniel E. Carpenter, has again moved the Court for bail pending appeal, now based on speculative concerns over the potential for COVID-19 to spread within Bureau of Prisons ("BOP") facilities. Carpenter, whose conviction has been affirmed and who has recently filed an *en banc* petition, does not even attempt to meet the legal standard for bail pending appeal. Rather, he appears to invoke some unspecified equitable power of this Court to release him because of a concern that there may be a COVID-19 outbreak at his BOP facility and that it may place him at a greater risk. His motion should be denied. Even if there was a legal basis to consider relief here, Carpenter cannot meet it. His condition—a 65-year-old with high blood pressure—is hardly unique, there is no evidence of an outbreak within BOP, and the BOP's extensive action plan is sufficient to ameliorate the risk if such an outbreak occurs.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Beginning in 2006, Carpenter led a vast multi-year scheme and conspiracy to defraud life insurance providers into issuing Stranger-Originated Life Insurance ("STOLI") policies—insurance policies on the lives of strangers that Carpenter could resell after a two-year contestability period. Carpenter was first indicted in December 2013 and—after several rounds of pretrial litigation—was convicted in June 2016 following a bench trial of wire fraud, mail fraud, money laundering, illegal monetary transactions, and conspiracy charges. During the pendency of Carpenter's Connecticut fraud case, he served a 36-month sentence for an unrelated fraud case from the District of Massachusetts. *See United States v. Carpenter*, Case No. 1:04cr10029 (D. Mass.), ECF No. 476 (granting self-surrender date of June 20, 2014).

Again following substantial further post-trial and sentencing litigation, the district court sentenced Carpenter to 30 months' imprisonment in December 2018. The district court denied bail pending appeal, and this Court affirmed. Dkt. #38. Carpenter began serving his sentence on March 22, 2019. On January 13, 2020, this Court issued a summary order affirming the district court's judgment. Dkt. #113-1. On February 26, 2020, Carpenter moved for rehearing *en banc*. Dkt. #123.

Notwithstanding the pending *en banc* petition, on January 27, 2020, Carpenter moved the district court *pro se* for a sentence reduction or, in the alternative, home

confinement under the First Step Act, claiming, among other things, that the "extraordinary and compelling circumstances" warranting his release were his actual innocence and his "minimal role" in the offense, *see* District Court Docket ("Dist. Dkt.") #506, despite the district court's finding of "overwhelming evidence that the defendant orchestrated a scheme to defraud the [life insurance] carriers," Dist. Dkt. #212 (Verdict and Special Findings) at 10 n.7. The government responded on March 19, 2020, explaining that compassionate release is inappropriate here, but that the BOP had already preliminarily recommended home confinement at his two-thirds date, November 20, 2020, under the elderly offender program for inmates at least 60 years old. Dist. Dkt. #510. As the government explained, although the defendant made note of some health issues, they did not form the basis of his petition for release. *Id*. Carpenter's *pro se* motion for release under the First Step Act is pending in the district court.

## II.    APPLICABLE LEGAL STANDARD

Under 18 U.S.C. § 3143(b), a district court must order a convicted defendant detained pending appeal unless it determines that (1) there is clear and convincing evidence "that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released"; (2) "the appeal is not for purpose of delay"; (3) "the appeal raises a substantial question of law or fact"; and (4) if the appeal is decided in the defendant's favor, it is "likely to result in reversal or an order

for a new trial." *United States v. Randell*, 761 F.2d 122, 124-25 (2d Cir. 1985). A "substantial question" is one that is "close," "fairly debatable," or "very well could be decided the other way." *Id.* at 125 (quotations omitted).

The defendant bears the burden of establishing all of the criteria for release pending appeal. *Id.*; *see also United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004) (recognizing statutory "presumption in favor of detention" following conviction). Significantly, 18 U.S.C. § 3143(b) provides no pathway to bail on the grounds of health concerns while incarcerated.

## III. CARPENTER DOES NOT SATISFY THE STANDARD FOR RELEASE

Carpenter makes no effort to confront the high bar for release pending appeal. Indeed, since this Court has already summarily affirmed his convictions and sentence, Carpenter would be hard pressed to claim that he can present "close" or "fairly debatable" questions of law or fact that are likely to result in reversal. Instead, Carpenter's latest attempt at early release appears to invoke an unspecified equitable basis for relief based on the *possibility* that the defendant may contract COVID-19 while incarcerated. No such mechanism exists under the law. Moreover, the relief is uncalled for by the equities, relying on speculation about the possibility of COVID-19 infection and limited information regarding Carpenter's own far-from-unique underlying health issues.

### A. Carpenter's Condition Is Far From Unique

While Carpenter presents some COVID-19 risk factors, they do not distinguish him from a large swath of BOP's population. In addition to age (Carpenter is 65 years old), the PSR presents limited evidence of hypertension and self-reported nonspecific "cardiac issues." PSR ¶ 238. Carpenter's wife reported that he had "some medical issues related to … diabetes," PSR ¶ 236, but Carpenter does not report the same, nor does he report taking medication for such a condition. In essence, Carpenter is a 65-year-old man with high blood pressure, which no doubt presents a COVID-19 risk, but is hardly among the more extreme risks noted by the Centers for Disease Control and Prevention. *See* "People Who are at Higher Risk," Centers for Disease Control and Prevention, *available at* https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html (last visited March 23, 2020); *see also* PSR ¶ 238 (Carpenter reporting "no physical limitations"). In fact, Carpenter did not hold out his medical condition as so serious as to amount to the "extraordinary and compelling circumstance[]" warranting his release under the First Step Act. Dist. Dkt. #506. Nor does Carpenter's condition distinguish him from a sizable part of the BOP population who would also be eligible for release under Carpenter's argument.

**B.    The BOP Has Taken Aggressive Measures To Combat COVID-19**

While Carpenter's underlying health issues are not unique, the BOP has aggressively addressed the concern that COVID-19 will place *any* of its inmates or staff at risk.  This has included directives from the BOP medical director to all field clinical personnel as early as January 31, 2020 and February 29, 2020—far earlier than many municipalities—with inmate and staff screening tools and best practices to prevent the spread of COVID-19. On March 13, 2020, the BOP initiated a Coronavirus (COVID-19) Phase Two Action Plan ("Action Plan") in order to minimize the risk of COVID-19 transmission into and inside its facilities. BOP maintains a COVID-19 resource web page, https://www.bop.gov/coronavirus/index.jsp, with detail regarding its ongoing efforts, which also includes reference to the Action Plan. *See* https://www.bop.gov/coronavirus/covid19_status.jsp and https://www.bop.gov/resources/news/20200313_covid-19.jsp.  To date, the Metropolitan Detention Center ("MDC")—where Carpenter is housed, and which has a total population of approximately 1,692 inmates—has only one reported case of COVID-19. Nationally the BOP has had only three cases of COVID-19 across all inmates in its facilities. The government has spoken with staff at MDC, who confirmed that Carpenter is not, and was never, in the same housing unit as the inmate who tested positive.  That inmate has since been isolated in a cell in a housing

- 6 -

unit that is separate from the rest of the MDC population and thus poses no ongoing risk to the general population.

Among the many preventative and mitigating measures adopted by the BOP are:

- **Screening of Inmates and Staff**: All new BOP inmates are screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with a documented risk of exposure will be quarantined; symptomatic inmates with a documented risk of exposure will be isolated and tested pursuant to local health authority protocols. In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures. (Staff registering a temperature of 100.4 degrees F or higher will be barred from the facility on that basis alone.)

- **Limitations on Contractors**: Contractor access to BOP facilities is restricted to only those performing essential services (*e.g.*, medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened using the same procedures as applied to staff prior to entry.

- **Quarantine Logistics**: The Action Plan directs all BOP institutions to assess their stockpiles of food, medicines, and sanitation supplies and to establish

- 7 -

quarantine areas within their facilities to house any detainees who are found to be infected with or at heightened risk of being infected with coronavirus pursuant to the above-described screening protocol.

- **Suspension of Social Visits and Tours**: BOP has placed a 30-day hold on all social visits, such as visits from friends and family, to limit the number of people entering the facility and interacting with detainees. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended for at least the first 30 days that the Action Plan is in effect.

- **Suspension of Staff Travel**: All staff training, other than for new hires, and official staff travel other than for relocation, is suspended.

- **Suspension of Legal Visits**: BOP has also placed a 30-day hold on legal visits, though such visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff.

- **Suspension of Inmate Movements**: BOP has also largely ceased the movement of inmates and detainees among its facilities. Though there will be exceptions for medical treatment and similar exigencies, and to avoid overcrowding, this will prevent transmissions between institutional populations. Where inmates

- 8 -

must be moved, careful screening will be employed and all movement will be monitored through the BOP Emergency Operations Center.

-        **Modified Operations**: Finally, the Action Plan requires wardens at BOP facilities to modify operations in order to maximize social distancing. Among the actions are staggering of meal times and recreation time.

In short, the BOP has been aggressive, and largely successful, in preventing the transmission of COVID-19 in its facilities. While the spread of COVID-19 is both unsettling and plainly raises cause for great public concern, the present circumstances do not warrant Carpenter's release on bail, nor the release of countless others who would likely follow with similarly speculative applications.

It should also be noted, as reflected on the BOP website, that the BOP has substantial experience dealing with protocols for infectious diseases to limit outbreaks at BOP facilities. The above information also makes clear that the BOP recognizes the unique threat posed by the transmission of viruses inside its facilities, and longstanding policies and procedures are already in place to reduce the risk of an outbreak of many serious diseases, such as HIV/AIDS, MRSA, sexually transmitted diseases, viral hepatitis, tuberculosis, and seasonal influenza. BOP plainly recognizes that COVID-19 carries an increased risk of transmission; that COVID-19 carries a higher fatality rate than many other viruses; and that the

- 9 -

COVID-19 situation has resulted in a state of emergency. But BOP and MDC have instituted more searching measures to address these heightened circumstances.

### C.    The Law Does Not Support Relief

Carpenter's application, styled as a motion for bail pending appeal, must fail on its face. The standard for release pending appeal is well settled, *see* 18 U.S.C. § 3143(b), and Carpenter—with his conviction already affirmed by this Court—cannot meet it. The defendant's reference to the law is thus understandably limited.

However, Carpenter is not the only defendant to attempt to use COVID-19 as a way out of jail. The few other courts to have considered release because of COVID-19, either as a grounds for pre-trial bail, bail pending appeal, or for some other reason, have been generally consistent in denying relief. *United States v. Davis,* No. 19-1604, slip op. (3d Cir. Mar. 20, 2020) (denying emergency motion for bail pending appeal for a 69-year-old white-collar defendant with multiple health issues, including asthma, heart arrhythmia, history of prostate cancer, high blood pressure)[1]; *United States v. Gileno*, No. 3:19-cr-161(VAB), 2020 WL 1307108 (D. Conn. Mar. 19, 2020) (rejecting reduction in sentence to home detention based on COVID-19 pandemic, and noting "at this time the Court cannot assume that the Bureau of Prisons will be unable to manage the outbreak or adequately treat Mr. Gileno should it emerge at his correctional facility while he is still incarcerated."); *Nikolic v.*

---

[1]    The appellee's response and the slip opinion are attached at Exhibits 1 & 2.

*Decker*, No. 19-cv-6057-LTS, 2020 WL 1304398, at *1 (S.D.N.Y. Mar. 19, 2020) (denying release pending habeas petition despite COVID-19 health crisis); *United States v. Martin*, No. PWG-19-140-13, 2020 WL1274857, at *4 (D. Md. Mar. 17, 2020) (denying appeal of pretrial detention order, noting measures taken to protect detainees from COVID-19 virus); *United States v. Hamilton*, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (denying pre-trial release on COVID-19 grounds, finding "that the possibility of an outbreak at MDC is not a 'compelling circumstance' justifying his release"); *Cf. Dawson v Asher*, No. C20-0409JLR-MAT, 2020 WL 1304557 (W.D. Wash. Mar. 19, 2020) (denying motion for TRO brought by detainees with heightened risk of illness or death from COVID-19 because of age or medical condition in civil immigration case).

These courts denied relief even for those with far more concerning underlying conditions than Carpenter. *See*, *e.g.*, Ex. 2 (noting Davis's underlying conditions); *Martin*, 2020 WL 1274857 at *4 ("while the record confirms that Martin has disclosed that he suffers from asthma, high blood pressure, and diabetes, this alone is insufficient to rebut the proffer by the Government that the correctional and medical staff at CDC are implementing precautionary and monitoring practices sufficient to protect detainees from exposure to the COVID-19 virus."); *see also Hamilton* 2020 WL 1323036 at *2 (noting Hamilton was in a "higher risk cohort

should he contract COVID-19," but did not suffer from respiratory issues and his health problems were well managed).

The only case cited by Carpenter, *see* Defendant's Motion at 2 n.1, is *United States v. Stephens*, No. 15-cr-95 (AJN), 2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020), in which the court reconsidered a prior denial of pre-trial bail based in part on COVID-19. But *Stephens* is easily distinguishable. First, it involved bail pending trial, not bail pending appeal, and thus the district court's discretion was far broader. *Compare* 18 U.S.C. § 3142 *and* 18 U.S.C. § 3143(b). Moreover, in addition to concern with the spread of COVID-19, the court noted changes in the strength of the Government's evidence, 2020 WL 1295155 at *1, the closeness of the initial bail determination, *id.*, and concerns over the ability of the defendant to prepare for trial, *id.* at *3. None of those issues are present here, where Carpenter has been convicted and that conviction has been affirmed by this Court.

## IV. CONCLUSION

Carpenter's appeal is based on claims that do not amount to a substantial question of law or fact likely to result in a reversal of his conviction or a new trial. Even if his COVID-19 concerns had a legal basis, they would not support bail here, where Carpenter's risk factors are not particularly unique, BOP has implemented comprehensive preventative measures, and courts have generally denied similar

relief to others. Accordingly, the defendant's motion for bail pending appeal should be denied.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

DAVID E. NOVICK
NEERAJ N. PATEL
ASSISTANT UNITED STATES ATTORNEYS
157 Church Street, 25th Floor
New Haven, CT  06510
Tel.: (203) 821-3700

## Federal Rule of Appellate Procedure 27(d) Certification

This is to certify that the foregoing brief complies with the 5,200-word limitation of Federal Rule of Appellate Procedure 27(d), in that the brief is calculated by the word processing program to contain approximately 2,666 words, exclusive of the signature block and this Certification.

DAVID E. NOVICK
ASSISTANT U.S. ATTORNEY

STATE OF CONNECTICUT

ss: New Haven, Connecticut

COUNTY OF NEW HAVEN

AFFIDAVIT

I, David E. Novick, state as follows:

1. I am an Assistant United States Attorney for the District of Connecticut. I represent the United States in the captioned appeal and I am admitted to practice before this Court.

2. I make this affidavit in support of the attached Government's Opposition to Defendant's Second Motion For Release Pending Appeal.

3. The facts set forth in the Government's Opposition are true and correct to the best of my knowledge and belief.

4. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 23, 2020.

AFFIANT

_____

DAVID E. NOVICK
ASSISTANT U.S. ATTORNEY

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2020, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

/s/

DAVID E. NOVICK
ASSISTANT UNITED STATES ATTORNEY

# Exhibit 1

*United States v. Davis*, No. 19-1604, slip op. (3d Cir. March 20, 2020)

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

DCO-057-E

No. <u>19-1604</u>

UNITED STATES OF AMERICA

v.

JAMES DAVIS,

Appellant

(E.D. Pa. No. 2-15-cr-00138-001)

Present:  RESTREPO and PORTER, <u>Circuit Judges</u>

    1. Motion filed by Appellant James Davis for bail pending appeal;

    2. Response filed by Appellee USA to motion for bail or release;

    3. Reply in Support of Motion by Appellant James Davis for bail pending appeal.

    4. Amended Reply in Support of Motion by Appellant for bail pending appeal

    5. Second Amended Reply in Support of by Appellant for bail pending appeal.

Respectfully,
Clerk/pdb

_____ORDER_____

    Appellant's Emergency Motion for Bail Pending Appeal Due to Coronavirus Risk
is denied. Appellant may renew the Emergency Motion if he is diagnosed with COVID-
19.

By the Court,

s/ David J. Porter
Circuit Judge

Dated: March 20, 2020
Lmr/cc: All Counsel of Record

**A True Copy:**

Patricia S. Dodszuweit, Clerk

# Exhibit 2

*United States v. Davis*, No. 19-1604, Government's Response in Opposition to Motion for Release (Dkt. #45) (3d Cir. March 18, 2020)

IN THE UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA  :

    v.                         :  No. 19-1604

JAMES DAVIS               :


**APPELLEE'S RESPONSE IN OPPOSITION TO MOTION FOR RELEASE**

Appellant James Davis seeks release from custody pending appeal in light of the COVID-19 crisis. The government suggests that, because he does not present any unique circumstance and the Bureau of Prisons is taking aggressive steps to mitigate risk from COVID-19, the motion should be denied.

On April 3, 2018, after a six-week trial, a jury convicted appellant James Davis on one count of conspiracy to commit honest services wire fraud and extortion under color of official right, in violation of 18 U.S.C. § 371, one count of honest services wire fraud, in violation of 18 U.S.C. § 1346, two counts of filing a false tax return, in violation of 26 U.S.C. § 7206(1), and three counts of willful failure to file a tax return, in violation of 26 U.S.C. § 7203. The matter concerned a complex bribery and kickback scheme involving the flow of concealed benefits between John Green, the former Sheriff of Philadelphia, and Davis, the largest vendor to the Philadelphia Sheriff's Office, over a nine-year period, from 2002 to 2011.

On March 1, 2019, Davis was sentenced to a term of imprisonment of 121 months. The judgment was entered on March 5, 2019. Davis promptly filed an appeal, as well as a motion in the district court for bail pending appeal. After full briefing, the district court denied that motion on April 16, 2019. The court granted motions for continuance of the date to self-report, ultimately directing that the defendant report to the custody of the Bureau of Prisons on May 14, 2019.

In this Court, Davis also sought bail pending appeal. After briefing, the Court denied the motion on May 10, 2019.

This Court appointed current counsel on January 10, 2020. It set a deadline for the appellant's brief of March 26, 2020, but on March 9, 2020, defense counsel moved to stay the briefing schedule pending issuance of a decision in a Supreme Court case which the government believes is entirely unrelated to this appeal.

Davis now seeks relief in light of the crisis regarding COVID-19. He correctly states that as a 69-year-old man with a medical history often presented by people in that demographic and older – asthma, heart arrhythmia, high blood pressure, cystitis, and a history of prostate cancer – he is at higher risk of an adverse result should he contract the coronavirus disease.

This situation is presented by numerous offenders who are now elderly and incarcerated as a result of their criminal conduct. The Bureau of Prisons (BOP)

therefore advises that it is taking aggressive steps to maintain the safety of inmates.

Currently, there are no reported cases of COVID-19 at any facility operated by BOP, among either inmates or staff. Further, BOP has been planning for potential coronavirus transmissions since January. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control (CDC), including by reviewing guidance from the World Health Organization (WHO).

On March 13, 2010, BOP announced that it was implementing the Coronavirus (COVID 19) Phase Two Action Plan ("Action Plan") in order to minimize the risk of COVID-19 transmission into and inside its facilities. The Action Plan comprises several preventive and mitigation measures, including the following:

**Screening of Inmates and Staff:** All new BOP inmates are screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with a documented risk of exposure will be quarantined; symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols. In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures. (Staff registering a temperature of 100.4 degrees F or higher will be barred from the facility on that basis alone.)

- 3 -

Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened using the same procedures as applied to staff prior to entry.

**Quarantine Logistics:** The Action Plan directs all BOP institutions to assess their stockpiles of food, medicines, and sanitation supplies and to establish quarantine areas within their facilities to house any detainees who are found to be infected with or at heightened risk of being infected with coronavirus pursuant to the above-described screening protocol.

**Suspension of Social Visits and Tours:** BOP has placed a 30-day hold on all social visits, such as visits from friends and family, to limit the number of people entering the facility and interacting with detainees. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended for at least the first 30 days that the Action Plan is in effect.

**Suspension of Legal Visits:** BOP has also placed a 30-day hold on legal visits, though such visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff.

- 4 -

**Suspension of Inmate Movements:** BOP has also ceased the movement of inmates and detainees among its facilities for at least the first 30 days that the Action Plan is in effect. Though there will be exceptions for medical treatment and similar exigencies, this will prevent transmissions between institutional populations. Likewise, all official staff travel has been cancelled, as has most staff training.

**Modified Operations:** Finally, the Action Plan requires wardens at BOP facilities to modify operations in order to maximize social distancing. Among the possible actions are staggering of meal times and recreation time.

Further details regarding these efforts are available at:

https://www.bop.gov/resources/news/20200313_covid-19.jsp

and at a regularly updated resource page:

https://www.bop.gov/coronavirus/index.jsp

Taken together, these measures are designed to sharply mitigate the risks of COVID-19 transmission in a BOP institution. We trust that BOP professionals will continue to monitor this situation and adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

As the appellant does not present a unique circumstance warranting further action at this time, the government respectfully recommends that the motion for release be denied.

Respectfully yours,

WILLIAM M. McSWAIN
United States Attorney


*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals


*/s Sarah Grieb*
SARAH GRIEB
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I hereby certify that this pleading has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Matthew Stiegler, Esq.
7145 Germantown Avenue, Suite 2
Philadelphia, PA  19119


/s Sarah Grieb
SARAH GRIEB
Assistant United States Attorney


DATED:  March 18, 2020.